**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SHAWN BOHANNAN,                                  :
    *Plaintiff*,                                 :
                                                 :                    CIVIL ACTION
    v.                                           :                    NO. 21-618
                                                 :
KIMBERLY-CLARK PENNSYLVANIA                       :
LLC,                                             :
    *Defendant*.                                 :

<u>**MEMORANDUM**</u>

**JONES, II  J.**                                                      **September 28, 2022**

## I.    INTRODUCTION

When Shawn Bohannan (hereinafter "Plaintiff"), an African American male, exhibited signs of being under the influence while operating heavy machinery at work, his employer, Kimberly-Clark Pennsylvania, LLC (hereinafter "Defendant") required that he undergo a drug and/or alcohol screening.  Though Plaintiff's breathalyzer test showed he was not under the influence of alcohol, he was unable to produce an adequate urine sample for the drug screening. When Plaintiff stated that he was unable to produce the sample, he signed a Refusal to Consent to Testing Form, and his employment was terminated that same day.  In response to his termination, Plaintiff filed suit in the Eastern District of Pennsylvania, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") and the Pennsylvania Human Relations Act (hereinafter "PHRA").  Presently before the Court is Defendant's Motion for Summary Judgment (hereinafter "Motion") (ECF No. 19).  For the reasons outlined below, Defendant's Motion is granted in its entirety.

## II.    STATEMENT OF FACTS

The facts interpreted in the light most favorable to Plaintiff[1] establish the details that

---

[1] For purposes of this discussion, this Court shall refer to Defendant's Statement of Undisputed Facts (ECF No. 20) as "SUMF," and Plaintiff's Response thereto (ECF No. 24) as "RSUMF."

follow.  Plaintiff, an African American male, was employed by Defendant at its facility in

Chester, Pennsylvania (hereinafter "the Mill") until he was terminated on August 28, 2017.

SUMF ¶¶ 1-2; RSUMF ¶ 1-2.  At the time of his termination, Plaintiff's direct supervisor was

Adrienne Bryant, who is two (2) or more races, including African American.  SUMF ¶ 3;

RSUMF ¶ 3.

At the Mill, employees use large, sophisticated machinery to manufacture toilet paper

from tree pulp and other materials.  SUMF ¶ 4; RSUMF ¶ 4.  At the time of his termination,

Plaintiff held the position of Pulp Level 4, which required him to, among other things, operate

a large machine called a Winder that measures about half the size of a football field in length

and is nearly two (2) stories tall.  SUMF ¶¶ 5-6; RSUMF ¶¶ 5-6.  With being a Pulp Level 4,

Plaintiff was a member of the Local 448 union at the Mill (hereinafter "the Union").  SUMF ¶

7; RSUMF ¶ 7.

With the nature of the manufacturing process at the Mill, worker safety is vital to

prevent injuries while operating machines like the Winder.  SUMF ¶ 8; RSUMF ¶ 8.  A safety

risk is created when an employee is under the influence of drugs and/or alcohol while at work,

so, to prevent such behavior, Defendant adopted a Drug and Alcohol Policy (hereinafter "the

Policy"), which sets forth a program focused on education, rehabilitation, testing, and

investigation that was bartered for and included in the labor agreement between Defendant and

the Union (hereinafter "the Labor Agreement").  SUMF ¶¶ 9-10; RSUMF ¶¶ 9-10.  As a

member of the Union, Plaintiff was subject to this Labor Agreement, including the Policy, at

the time of his termination and had previously received a copy of the Labor Agreement.

SUMF ¶ 11; RSUMF ¶ 11.  In addition to the Policy, Defendant developed additional general

guidelines (hereinafter "the Guidelines") to use when implementing the Policy at the Mill.

SUMF ¶ 12; RSUMF ¶ 12.

### A.  The Policy on Testing an Employee for Drugs and/or Alcohol

Under the Policy, one agreed upon basis for Defendant to test an employee for drugs and/or alcohol (hereinafter "For Cause Testing") is if the employee is observed displaying one (1) or more types of erratic behavior, including but not limited to: being excessively talkative or loud and having dilated pupils or bloodshot eyes.  SUMF ¶ 13; RSUMF ¶ 13. Pursuant to the Guidelines, if possible, at least two (2) different management representatives should observe the employee's erratic behavior and complete a For Cause Testing Assessment Guide for Team Leaders (hereinafter "Testing Guide") when For Cause Testing is considered.  SUMF ¶ 14; RSUMF ¶ 14.

If an employee refuses to submit to drug and/or alcohol testing, the Policy requires the employee to be held responsible for such refusal.  SUMF ¶ 15; RSUMF ¶ 15.  Under the Guidelines, if the employee leaves the testing site, it is considered a refusal to submit to testing.  SUMF ¶ 16; RSUMF ¶ 16.[2]  If an employee refuses to be tested, pursuant to the Guidelines, the employee should be presented with and asked to read and sign a Refusal to Submit to Testing Form (hereinafter "Refusal to Test Form").  SUMF ¶ 17; RSUMF ¶ 18. For employees who are members of the Union, the Refusal to Test Form states, "My signature below verifies that I have refused to submit to testing and that I have been notified my refusal will lead to discharge."  SUMF ¶ 18; RSUMF ¶ 18.

---

[2] Though Plaintiff seemingly denies whether leaving the testing site constitutes a refusal, his denial is directly refuted by record evidence.  Specifically, the Testing Guide states that "[y]ou must stay in the immediate vicinity (e.g., the waiting room) with the employee while waiting for the testing to occur.  Do not leave the site or allow the employee to leave.  Leaving the site (employee) is considered a refusal to test."  *See* Testing Information, attached to Pl's Rep. as Exhibit B (hereinafter "Ex. B") at 10 (emphasis omitted).  Plaintiff attempts to refute this point by citing further language in the document like "[i]f the employee refuses to be escorted or tested inform the employee that these refusals will be considered evidence of a positive (failed) test result and that he/she is putting his/her employment at risk."  Ex. B at 9.  However, such language does not contradict the stated fact, so it remains undisputed.

**B.  Plaintiff is Believed to be Under the Influence of Drugs and/or Alcohol**

Shortly after Plaintiff reported to work at the Mill on the morning of August 28, 2017,

his supervisor, Ms. Bryant, observed that he was exhibiting certain behaviors which led her to

believe that he might be under the influence of alcohol and/or drugs.  SUMF ¶ 19; RSUMF ¶

19.  In her opinion, Plaintiff was talking very loudly, interrupting people, not paying attention

to his surroundings, not making direct eye contact, and had glassy eyes.  SUMF ¶ 20; RSUMF

¶ 20.[3]  Ms. Bryant reported these observations to Defendant's Labor Relations Specialist,

Patricia Langdon, and Ms. Langdon provided Ms. Bryant with a blank copy of the Testing

Guide.  SUMF ¶¶ 21-22; RSUMF ¶¶ 21-22.

Ms. Bryant completed the Testing Guide based on her own observations and returned it

to Ms. Langdon.  SUMF ¶ 23; RSUMF ¶ 23.  Ms. Bryant also asked another employee,

Thomas Rathof, to observe Plaintiff while he was working and to complete a Testing Guide

based on his own observations.  SUMF ¶ 24; RSUMF ¶ 24.  Mr. Rathof completed and

returned the Testing Guide to Ms. Bryant, who then returned it to Ms. Langdon.  SUMF ¶ 25;

RSUMF ¶ 25.  The Testing Guides completed by Ms. Bryant and Mr. Rathof both indicated

that they observed Plaintiff exhibiting more than one (1) of the erratic behaviors identified on

the Testing Guide.  SUMF ¶ 26; RSUMF ¶ 26.  Defendant, thus, determined that For Cause

Testing was warranted.  SUMF ¶ 27; RSUMF ¶ 27.[4]  Ms. Langdon then notified Sean Kelly,

---

[3] Though Plaintiff further adds that Ms. Bryant never asked Plaintiff why he was exhibiting these types of behaviors, he fails to provide any pinpoint citation to the Policy or Guidelines that requires such an action, likely because no such obligation exists.  SUMF ¶ 20; RSUMF ¶ 20.  While Plaintiff continues to raise this point throughout his Response to Defendant's Statement of Undisputed Facts, without any citation to this obligation, the Court will not consider this point further.

[4] Plaintiff states that he "is without knowledge or information sufficient to form a belief as to the truth of the assertions" for this statement.  RSUMF ¶ 27.  However, at this point in the litigation, Plaintiff has had the benefit of discovery and fails to point to any fact that disputes this assertion.  Accordingly, the Court must consider it to be undisputed.

the Union's President, and J.R. Cowan, the Union's Vice President, of this decision.  SUMF ¶ 28; RSUMF ¶ 28.

Once this decision was made, Ms. Bryant escorted Plaintiff to a meeting with, among others, Ms. Langdon and Mr. Kelly, to notify him of the decision.  SUMF ¶ 29; RSUMF ¶ 29. In addition to this meeting, Plaintiff was also given the opportunity to speak alone with his Union representatives.  SUMF ¶ 30; RSUMF ¶ 30.  Afterwards, Ms. Langdon and Mr. Kelly accompanied Plaintiff, along with security professional, to the testing site to complete the For Cause Testing.  SUMF ¶ 31; RSUMF ¶ 31.

### C.  Plaintiff Undergoes For Cause Testing

At the testing site, Plaintiff completed a breathalyzer test, which revealed that he was not under the influence of alcohol.  SUMF ¶¶ 32-33; RSUMF ¶¶ 32-33.  After completing the breathalyzer test, the testing site asked Plaintiff to produce a urine sample for drug testing. SUMF ¶ 33; RSUMF ¶ 33.  Both the alcohol breathalyzer test and the determinations as to the adequacy of the urine samples were performed and made by employees of the testing cite, not Defendant.  SUMF ¶ 36; RSUMF ¶ 36.  Though Plaintiff produced two (2) urine samples, the testing site determined that neither sample was adequate for drug testing because one did not satisfy the testing site's temperature requirements and the other did not meet the volume requirements.  SUMF ¶¶ 34-35; RSUMF ¶ 34-35.

After producing the second sample, Plaintiff informed Ms. Langdon and Mr. Kelly that he was unable to produce a third, but he did not tell them or anyone at the testing cite why he was unable to do so.  SUMF ¶ 37; RSUMF ¶ 37.  In response, Ms. Langdon provided Plaintiff with a copy of the Refusal to Test Form and informed Plaintiff that if he did not submit to further testing, as required by Defendant, his employment would be terminated.  SUMF ¶ 38;

RSUMF ¶ 38. [5]  After reviewing the Refusal to Test Form with Mr. Kelly, Plaintiff executed the Refusal Test Form without making any edits to it.  SUMF ¶ 39; RSUMF ¶ 39.[6]  At the time Plaintiff executed the Refusal to Test Form, the testing site was not closing.  SUMF ¶ 41; RSUMF ¶ 41.

By executing the Refusal to Test Form, Plaintiff understood that his employment was going to be terminated.  SUMF ¶ 42; RSUMF ¶ 42.  Accordingly, Plaintiff, Ms. Langdon, and Mr. Kelly returned to the Mill, and Plaintiff's employment was terminated that same day. SUMF ¶ 44; RSUMF ¶ 44.  At no time on the return trip to the Mill did Plaintiff mention or discuss the drug testing with Ms. Langdon or Mr. Kelly. SUMF ¶ 45; RSUMF ¶ 45.

### D.  The Union Files a Grievance on Plaintiff's Behalf

The next day, on August 29, 2017, the Union filed a grievance on Plaintiff's behalf regarding his termination.  SUMF ¶ 46; RSUMF ¶ 46.  Defendant denied the grievance, so the matter was referred to the second step of the grievance process where Defendant, again, denied it.  SUMF ¶ 47; RSUMF ¶ 47.  The Union considered pursuing the matter to arbitration but, ultimately, declined to do so and withdrew the filed grievance.  SUMF ¶ 48; RSUMF ¶ 48.  In the letter notifying Plaintiff of the withdrawal, the Union stated, "we do not believe we would prevail if this grievance were presented to an arbitrator in a hearing."  SUMF ¶ 49; RSUMF ¶ 49; *see* Letter from John Ash to Plaintiff dated Nov. 14, 2017, attached to Mot. as Exhibit 10. Plaintiff did not appeal the Union's withdrawal decision.  SUMF ¶ 50; RSUMF ¶ 50.

---

[5] Plaintiff further clarifies that Ms. Langdon told him that he would be terminated regardless of whether he signed the Refusal to Test Form if he refused to produce a third sample.  RSUMF ¶ 38.
[6] Plaintiff states that Ms. Langdon never told him that he had the option of not signing the Refusal to Test Form or that he could make any changes to it before signing.  RSUMF ¶ 39.

### E.  Plaintiff files Complaints with the Pennsylvania Human Relations Commission (hereinafter "PHRC") and the U.S. Equal Employment Opportunity Commission (hereinafter "EEOC")

On December 6, 2017, Plaintiff dual-filed a Complaint with the PHRC and the EEOC, alleging discrimination by Defendant based on race.  SUMF ¶ 51; RSUMF ¶ 51.  Plaintiff amended this Complaint on January 8, 2018.  SUMF ¶ 52; RSUMF ¶ 52.  In his Complaint, Plaintiff attempted to identify comparators who received more favorable treatment than Plaintiff; these comparators are Sean Mues, Michael Albany, and Brian Gill.  SUMF ¶ 54; RSUMF ¶ 54. However, none of these individuals held the title of Pulp Level 4 at the time that they were subjected to drug and/or alcohol testing.  SUMF ¶ 55; RSUMF ¶ 55.[7]  In the decisions to substance test these alleged comparators, neither Ms. Bryant nor Mr. Rathof were involved,[8] and none of the alleged comparators were reported as showing any of the following erratic behaviors at the time they were subjected to drug and/or alcohol testing: rambling, shouting, being talkative, and having glassy eyes.  SUMF ¶¶ 56-57; RSUMF ¶¶ 56-57.[9]  All the alleged comparators were subjected to drug and/or alcohol testing by Defendant, but none refused to complete it.  SUMF ¶¶ 58-59; RSUMF ¶¶ 58-59.[10]  In fact, other than Plaintiff, no employee has

---

[7] Though Plaintiff further advises that these individuals, regardless of job titles, were subjected to the Policy because they were Union members, he fails to provide any factual citation to support this.  RSUMF ¶ 55.  Further, Plaintiff admits that, at the time they were subjected to drug and/or alcohol testing: Mr Mues was Tow Motor Driver; Mr. Albany was an Adjuster; and Mr. Gill was a Bale Handler.  *See* Am. Compl. ¶¶ 16-18.

[8] Rather, according to Plaintiff, the following employees were involved: Sue McBride and Gail Whitehead determined that Mr. Mues should undergo substance testing; Dan Falcone and Mr. Kelly agreed that testing was warranted for Mr. Albany; and Bob Birney, Dave Burgio, and J.R. Cowan determined Mr. Gill should be subjected to testing.  *See* Am. Compl. ¶¶ 16-18.

[9] *See* Pl's Am. Compl., ECF No. 2, ¶¶ 16-18 (noting the following reasons for why the alleged comparators had to undergo drug and/or alcohol testing: Mr. Mues ran a stop sign, Mr. Albany was caught sleeping on the job, and Mr. Gill smelled of alcohol).

[10] Again, Plaintiff states that he "is without knowledge or information sufficient to form a belief as to the truth of the assertions" for this statement.  RSUMF ¶ 59.  Thus, because no such rebuttal evidence was found through discovery, the Court must consider it undisputed.

executed a Refusal to Test Form since at least 2015.  SUMF ¶ 40; RSUMF ¶ 40.[11]  As a result of testing positive for drugs and/or alcohol, both Mr. Mues and Mr. Albany were terminated. SUMF ¶ 60; RSUMF ¶ 60.

Plaintiff admits that he has never seen or heard Ms. Bryant, Ms. Langdon, Mr. Rathof, or any other person in management at the Mill making statement or participating in conduct that he believes to reflect a bias against African Americans.  SUMF ¶¶ 61-62; RSUMF ¶¶ 61-62. Plaintiff has never seen anything in writing authored by Ms. Bryant, Ms. Langdon, Mr. Rathof, or any person in management at the Mill that would cause him to believe such person harbors a bias against or discriminates against African Americans.  SUMF ¶ 63; RSUMF ¶ 63.  The only individuals whom Plaintiff believes engaged in discrimination are those persons involved in the decision to test Plaintiff for drugs and/or alcohol on August 28, 2017.  SUMF ¶ 65; RSUMF ¶ 65.  However, after investigating Plaintiff's allegations, the PHRC sent Plaintiff a letter that stated, "the complaint should be closed because the facts of the case do not establish that probable cause exists to credit the allegations of unlawful discrimination."  SUMF ¶ 53; RSUMF ¶ 53; *see* Letter from PHRC dated Aug. 8, 2019, attached to Mot. as Exhibit 13.

## III.   PROCEDURAL HISTORY

On February 10, 2021, Plaintiff filed a Complaint in the Eastern District of Pennsylvania. *See* Compl., ECF No. 1.  On March 22, 2021, Plaintiff filed an Amended Complaint, asserting the following two (2) causes of action: (1) violations of Title VII, and (2) violation of the PHRA.  *See* Am. Compl., ECF No. 2, ¶¶ 30-37.  On May 21, 2021, Defendant filed an Answer to the Amended Complaint with Affirmative Defenses.  ECF No. 8.

---

[11] Plaintiff repeats that he "is without knowledge or information sufficient to form a belief as to the truth of the assertions" for this statement.  RSUMF ¶ 40.  However, for the same reasons previously stated, the Court must consider it undisputed for purposes of the present Motion.

After discovery, on January 24, 2022, Defendant filed the present Motion. Therein, Defendant raises the following three (3) arguments in support of summary judgment: (1) Plaintiff cannot establish a *prima facie* case of discrimination because he has failed to identify comparators who were similarly situated; (2) even assuming Plaintiff could present such comparators, he was terminated for the legitimate reason of refusing the For Cause Test; and (3) Plaintiff has not established that such decision was pretextual for discrimination. On February 24, 2022, Plaintiff filed his Response in Opposition (hereinafter "Response") (ECF No. 23), where he states that there are multiple allegedly disputed facts that remain, so granting summary judgment at this juncture would be premature and inappropriate.[12] Defendant filed a Reply in Further Support of their Motion (hereinafter "Reply) (ECF No. 23) on March 10, 2022, noting that Plaintiff does not dispute that he fails to identify any comparators who are similarly situated, and none of his allegedly disputed facts are supported by record evidence, and some actually contradict Plaintiff's prior sworn testimony. With these filings, Defendant's Motion is ripe for the Court's review.

---

[12] Specifically, Plaintiff states that the following eleven (11) facts remain disputed:

1. Whether there was a legitimate basis for subjecting Plaintiff to substance testing;
2. Whether Ms. Bryant and Mr. Rathof complied with the Guidelines in concluding that Plaintiff would be subjected to testing because neither reviewed their observations with Plaintiff or asked him for an explanation of the behavior;
3. Whether Ms. Langdon complied with the Guidelines in concluding that Plaintiff would be subject to testing because she never reviewed the observations with Plaintiff or asked him for an explanation of the behavior;
4. The breathalyzer test revealed Plaintiff was not under the influence of alcohol;
5. Whether the urine samples provided indicated that he was under the influence of drugs;
6. Whether Plaintiff refused to provide a third sample by simply saying that he was unable to produce one;
7. Ms. Langdon never asked Plaintiff why he was unable to provide a third urine sample;
8. Whether the Policy actually mandates termination for employees who refuse to submit to drug testing;
9. Ms. Langdon failed to provide a reason for why Plaintiff's inability to provide a third sample called for termination or why discipline less than termination was not appropriate;
10. Whether Ms. Langdon intentionally violated the Policy and Guidelines by telling Plaintiff that he would be terminated regardless of whether he signed the Refusal to Test Form; and
11. Whether there is evidence that Mr. Rathof has made racially derogatory comments against African Americans.

Resp. 7-8.

## IV.   SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).   "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted).   Therefore, to defeat a motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party.   *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186,193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).   "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).

Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.   To that end, however,

"conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (quoting *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608 (3d Cir. 2002)) (internal quotation marks omitted). Instead, an affiant must set forth specific facts that reveal a genuine issue of material fact. *Id*. A plaintiff's reliance on his own testimony, without further evidence, is insufficient to establish a material issue of fact and overcome a motion for summary judgment. *See Solomon v. Soc'y of Auto. Eng'rs.*, 41 F. App'x 585, 586 (3d. Cir. 2002) (determining that evidence based solely on the plaintiff's own testimony is insufficient to survive a claim of summary judgment); *Fusco v. Bucks Cnty.*, No. 08-CV-2082, 2009 WL 4911938, at *11 (E.D. Pa. Dec. 21, 2009) (granting summary judgment where, even after discovery, "Plaintiff offers no support, beyond her own testimony, to corroborate her claims.").

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(3)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Feb. 23, 2022) http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.").

In employment discrimination cases, the summary judgment standard "is applied with added rigor...[because] intent and credibility are crucial issues." *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) (internal quotation marks omitted).  The Third Circuit has found that "summary judgment is...rarely appropriate in this type of case." *Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 509 (3d Cir. 1996).  "Simply by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment." *Id*. at 509-510 (internal quotation marks omitted).

## V.   DISCUSSION

Defendant has moved for summary judgment, specifically asking this Court to declare the following: (1) Plaintiff has failed to present a *prima facie* case of discrimination because he has, undisputedly, failed to identify any comparators that are similarly situated to him; (2) even if Plaintiff had identified such comparators, Defendant had a legitimate reason for terminating Plaintiff, namely that he refused to submit to drug testing when he refused to produce a third urine sample; and (3) Plaintiff has pointed to no evidence to suggest that Defendant's legitimate, non-discriminatory reason is actually pretext for racial discrimination.  Mot. 8; Reply 1-2.

Plaintiff brings claims under Title VII and the PHRA.  Although Plaintiff makes separate claims under both, the Court will consider the race discrimination claims together and under the same standard.  *See Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006) (noting Title VII claims are interpreted alongside analogous provisions of the PHRA).

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his [or her] compensation . . . because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000-e-2(a)(1).  Without direct evidence of discrimination, such as the case before the Court today, race-based discrimination claims brought under Title VII are analyzed under the three-step *McDonell Douglas* burden-shifting framework.  *See Makky v. Chertoff*, 541

F.3d 205, 214 (3d Cir. 2008).  In *McDonnell Douglas Corp. v. Green*, the Supreme Court articulated "the standards governing the disposition of an action challenging employment discrimination." 411 U.S. 792, 798 (1973).[13]  The Court refined these standards in *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  This Court incorporates those refined standards in the framework set forth below.

### A. *Prima Facie* Case

First, Plaintiff has the burden of proving by a preponderance of the evidence a *prima facie* case of discrimination.  *Burdine*, 450 U.S. at 253.  To state a *prima facie* case of race discrimination, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position he sought to attain or retain; (3) he suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of intentional discrimination.  *Makky*, 541 F.3d at 214.  Here, it is undisputed that Plaintiff has met the first three (3) prongs of establishing a *prima facie* case, so the Court's analysis will focus on whether he's presented an inference of intentional discrimination.

### 1.  Non-African American Comparators

A plaintiff may identify evidence giving rise to an inference of intentional discrimination by showing that "similarly situated" employees outside of the plaintiff's protected class were treated more favorably.  *Butler v. Arctic Glacier USA*, 213 F. Supp. 3d 711, 716 (E.D. Pa. 2016).  To be similarly situated, the identified comparators must be "similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)).  "This standard is case-specific, but generally requires a

---

[13] The issue before the *McDonnell Douglas* Court "concern[ed] the order and allocation of proof in a private, non-class action challenging employment discrimination."  *McDonnell Douglas Corp.*, 411 U.S. at 798.

'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" *Butler*, 213 F. Supp. 3d at 716-17 (quoting *Opsatnik*, 335 F. App'x at 223). *See Wilcher v. Postermaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011) ("A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in.").

Here, Defendant argues that none of the three (3) alleged comparators Plaintiff identified in his Amended Complaint, Mr. Mues, Mr. Albany, nor Mr. Gill, are similarly situated to Plaintiff. Mot. 14. Interestingly, Plaintiff's Response does not refute this point and, instead, appears to point to other reasons that the drug and/or alcohol testing should never have occurred. Resp. 7-8. While the Court will later address Plaintiff's newly presented reasons, the Court will first consider the three (3) comparators raised in Plaintiff's Amended Complaint.

First, it is notable that none of the alleged comparators held the position of Pulp Level 4 at the time of their substance testing. SUMF ¶ 55; RSUMF ¶ 55. By Plaintiff's own allegations, when they were subjected to drug and/or alcohol testing:

- Mr. Mues held the position of a Tow Motor Driver. *See* Am. Compl. ¶ 16.

- Mr. Albany was an Adjuster. *See* Am. Compl. ¶ 17.

- Mr. Gill was a Bale Handler. *See* Am. Compl. ¶ 18.

Second, neither Ms. Bryant nor Mr. Rathof (the two (2) employees who observed Plaintiff's behavior and suggested he undergo drug and/or alcohol testing) were involved in the decisions to substance test any of the alleged comparators. *See* SUMF ¶ 56; RSUMF ¶ 56. Plaintiff's Amended Complaint admits the following:

- Sue McBride and Gail Whitehead were involved in the decision to drug and/or alcohol test Mr. Mues. *See* Am. Compl. ¶ 16.

- Dan Falcone and Mr. Kelly decided to substance test Mr. Albany. *See* Am. Compl. ¶ 17.

- Bob Birney, J.R. Cowan, and Dave Brugio determined that a drug and/or alcohol test was warranted for Mr. Gill. *See* Am. Compl. ¶ 18.

Third, none of the alleged comparators engaged in the same conduct as Plaintiff to warrant a drug and/or alcohol test. Plaintiff was asked to undergo a drug and/or alcohol test after he was observed: talking very loudly, interrupting people, not paying attention to his surroundings, not making direct eye contact, and having glassy eyes. SUMF ¶ 20; RSUMF ¶ 20. By contrast, in Plaintiff's own words, Defendant asked:

- Mr. Mues to undergo drug and/or alcohol testing after he ran a stop sign. *See* Am. Compl. ¶ 16.

- Mr. Albany to undergo substance testing after he was caught sleeping on the job. *See* Am. Compl. ¶ 17.

- Mr. Gill to undergo testing because he smelled of alcohol. *See* Am. Compl. ¶ 18.

In addition to these blatant behavioral differences, critically, it is undisputed that none of the alleged comparators refused to complete the required drug and/or alcohol testing. SUMF ¶¶ 58-59; RSUMF ¶¶ 58-59. In fact, Plaintiff is the only one of Defendant's employees who has refused to complete the testing at the Mill since at least 2015. SUMF ¶ 40; RSUMF ¶ 40. As such, to state that any of the alleged comparators engaged in the same conduct as Plaintiff is entirely unpersuasive.

Finally, it is important to note that none of the alleged comparators received more favorable treatment than Plaintiff because they were all asked to take a drug and/or alcohol test. SUMF ¶¶ 58-59; RSUMF ¶¶ 58-59.  Thus, even if the alleged comparators engaged in the same conduct as Plaintiff—a conclusion that is undisputedly false—Plaintiff has failed to identify any individual who engaged in the same conduct as him and was <u>not</u> required to take a drug and/or alcohol test.  *See Butler*, 213 F. Supp. 3d at 717 ("Since Plaintiff has not identified any other employee who was specifically accused of drug use, but was not asked to take a drug test, nor has he cited other evidence to support an inference of discrimination surrounding his drug test, he has failed to establish a *prima facie* case of race discrimination with respect to the drug test.").

Taking this all under consideration, the Court is satisfied that Plaintiff has failed to produce sufficient evidence to suggest that his alleged non-African American comparators are similarly situated to him.  Even if these individuals were similarly situated, however, Plaintiff still fails to explain, and this Court fails to see, how they were treated more favorably than Plaintiff.  Accordingly, Plaintiff's attempt to show an inference of intentional discrimination through comparator evidence fails.

### 2.  Plaintiff's Eleven (11) Alleged Facts Against Summary Judgment

Finding that Plaintiff has failed to produce sufficient comparator evidence, the Court next addresses Plaintiff's allegedly disputed material facts.  Resp. 7-8.  Specifically, Plaintiff raises eleven (11) concerns to attempt to defeat summary judgment.  The Court will address each in turn.

First, Plaintiff disputes whether he was exhibiting erratic behavior on the day in question to warrant substance testing.  Resp. 7.  Though the Court recognizes Plaintiff's disagreement with the decision, and even assuming Defendant was incorrect in believing Plaintiff exhibited

signs of being under the influence, such inaccuracy is insufficient to establish an inference of discrimination or pretext. *See Martin v. Health Care Retirement Corp.*, 67 F. App'x 109, 112 (3d Cir. 2003) (noting that even when a decision maker is wrong as to whether the plaintiff engaged in misconduct, this is insufficient to establish a discrimination claim); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot show that the employer's decision was wrong or mistaken since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."). Thus, even assuming Defendant was incorrect in its decision to substance test Plaintiff, this impropriety, alone, is insufficient to raise an inference of discrimination.

Next, in his second and third factual allegations, Plaintiff asserts that the Guidelines required Ms. Bryant, Mr. Rathof, and Ms. Langdon to confront Plaintiff about their observations before subjecting him to substance testing. Resp. 7. However, Plaintiff has failed to cite, and this Court's independent research has failed to find, anything in the Guidelines that requires such a confrontation. Without such, Plaintiff's own testimony, alone, is insufficient to raise an inference of discrimination.

As a fourth factual assertion, Plaintiff states that his breathalyzer result showed that he was not under the influence of alcohol at the time of his substance testing. Resp. 7. The parties do not deny this point; however, it is immaterial for the present Motion because Defendant terminated Plaintiff for leaving the testing site without providing an adequate urine sample for drug testing. Thus, the Court will not consider the point further for purposes of the present Motion.

Fifth, Plaintiff states that the urine samples he provided did not indicate that he was under the influence of drugs.  Resp. 7.  Though not explicitly stated, Plaintiff seems to provide this fact to imply that, without evidence of a positive sample, it was inappropriate for Defendant to discipline him.  However, the Testing Guide explicitly states that if an employee refuses to test, "these refusals will be evidence of a positive (failed) test result and he/she is putting his/her employment at risk".  Ex. B at 9.  Additionally, Plaintiff admits that he understood he was going to be terminated when he signed the Refusal to Test Form.  SUMF ¶ 42; RSUMF ¶ 42.  In fact, the Form, itself, explicitly reads, "My signature below verifies that I have refused to submit to testing and that I have been notified my refusal will lead to discharge."  Ex. B at 14. Accordingly, whether Plaintiff would have produced a positive sample is irrelevant for purposes of the present Motion.

Sixth, Plaintiff states that he never refused to supply a third urine sample; rather, he simply stated that he was unable to produce a sample at the time.  Resp. 7.  However, as Defendant notes, whether Plaintiff was unable or unwilling to produce a third sample is irrelevant because leaving the testing facility without producing a viable sample is undisputedly considered a refusal.  The Testing Guide states that "[y]ou must stay in the immediate vicinity (e.g., the waiting room) with the employee while waiting for the testing to occur.  Do not leave the site or allow the employee to leave.  Leaving the site (employee) is considered a refusal to test."  Ex. B at 10 (emphasis omitted).  Plaintiff further verified his understanding that leaving the testing facility, and executing the Refusal to Test Form, would lead to his termination. SUMF ¶ 42; RSUMF ¶ 42.  Accordingly, whether Plaintiff was unable or unwilling to produce a third sample is irrelevant when Plaintiff knowingly left the testing facility, having understood the consequences that this would entail.

Seventh, Plaintiff states that Ms. Langdon never inquired as to why Plaintiff was unable to produce a third urine sample. Resp. 7. In support of this statement, Plaintiff fails to cite to any regulation in the Guidelines or the Policy that would require Ms. Langdon to make this inquiry, likely because such requirement does not exist. Even if the requirement did exist, however, as previously stated, Plaintiff was terminated for leaving the facility without providing an adequate testing sample. Why Plaintiff was unable to do so is irrelevant because the simple act of leaving was sufficient grounds for termination.

Eighth, Plaintiff alleges that even if he refused to provide a third urine sample for drug testing, the Policy and Guidelines allow for an employee to be disciplined with a punishment less severe than termination. Resp. 7-8. Looking at the Decision Making and Process Guide for For Cause Testing, the guide explicitly states that "If the employee refuses to take the test, remind him/her that a refusal will be considered a violation of the corporate policy and the employee will be subject to discipline up to and including termination." Ex. B at 11. The Refusal to Test Form then clarifies that "refusal [to submit to testing] will lead to discharge," and Plaintiff admits that he knew termination would result from his refusal. Ex. B at 14; SUMF ¶ 42; RSUMF ¶ 42. Thus, Defendant was within its right to terminate Plaintiff for refusing to submit a third urine sample.

Ninth, Plaintiff states that throughout the course of Ms. Langdon's deposition, she failed to provide any reasonable explanation for why Plaintiff was going to be terminated, regardless of whether he signed the Refusal to Test Form. Resp. 8. As the Court has stated multiple times, refusing to test was an offense punishable by termination. Though Ms. Langdon does not explain why she did not provide a lesser punishment to Plaintiff, Plaintiff points to no Policy or

Guideline that requires her to do so.  Without such, it is immaterial for purposes of the present Motion why Ms. Langdon chose to terminate Plaintiff over another punishment.

Tenth, Plaintiff asserts that Ms. Langdon intentionally violated the Policy and Guidelines by telling him that he would be terminated regardless of whether he signed the Refusal to Test Form.  Resp. 8.  However, as previously stated multiple times, refusing to submit to testing was punishable by termination.  In fact, the Refusal to Test Form even considers an employee's ability to refuse when it notes: "If the employee refuses to sign this form, please note 'asked to sign, but refused' in the place for the employee's signature."  Ex. B at 14.  Despite this, the Form still states that "refusal will lead to discharge."  Ex. B at 14.  Thus, Ms. Langdon was correct in stating that whether Plaintiff signed the Refusal to Test Form was irrelevant because, if Plaintiff refused to provide a usable urine sample, his refusal was a terminable offense.

Eleventh, Plaintiff states that he heard from an un-named employee that Mr. Rathof has made racially charged comments.  Resp. 8.  However, in Plaintiff's own, sworn deposition testimony, he was asked about Mr. Rathof's biases, and Plaintiff responded that no one had ever told him that Mr. Rathof harbors any biases against African Americans.  *See* Pl.'s Dep. Tr., attached to Mot. as Exhibit 1, at 201:23-202:5 ("Q: Has anyone ever told you that Tom Rathof has—that they have heard Tom Rathof make comments, say anything, do anything, write anything that causes them to believe that Tom Rathof is biased against African-Americans or blacks? A: No.").  Given Plaintiff's own contradiction with this allegation, the Court finds it unpersuasive for establishing an inference of intentional discrimination.

Having addressed all eleven (11) of Plaintiff's allegedly disputed facts, the Court finds that none warrant finding that Plaintiff established a *prima facie* case of discrimination under either Title VII or the PHRA.  Without such, Defendant's Motion must be granted in its entirety.

### B.  Non-Discriminatory Reasons

Because Plaintiff has failed to establish a *prima facie* case of discrimination, the Court is not obligated to continue its analysis under *McDonnell-Douglas*.  However, assuming *arguendo* that Plaintiff did establish a *prima facie* case, the burden would then shift to Defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [treatment]."  *Burdine*, 450 U.S. at 253.  To satisfy this burden, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons."  *Id.* at 254.  The inquiry concerning whether the defendant has met its burden of production "can involve no credibility assessment," since "the burden-of-production determination necessarily *precedes* the credibility-assessment stage."  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 509 (1993) (emphasis in original).  "The defendant satisfies its burden of production, and rebuts the plaintiff's *prima facie* showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons."  *Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 461 (E.D. Pa. 2013); *see also St. Mary's Honor Ctr.*, 509 U.S. at 509) ("By producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production . . ." (emphasis in original).

Here, as the Court has already discussed at length, Defendant has provided ample evidence to suggest that Plaintiff was terminated because of his refusal to provide an adequate urine sample for drug testing.  Thus, Defendant has satisfied its burden of production.

### C.  Pretext

Because Defendant rebutted Plaintiff's *prima facie* case, "[P]laintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S.

at 252–53 (citing *McDonnell Douglas*, 411 U.S. at 804).  Therefore, to survive summary

judgment, "a plaintiff must submit evidence [of pretext] from which a factfinder could

reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that

an invidious discriminatory reason was more likely than not a motivating or determinative cause

of the employer's action." *Fuentes,* 32 F.3d at 764.  In showing pretext, it is not enough to

reassert the facts of the *prima facie* case.  *See Burdine*, 450 U.S. at 255 ("[T]he [pretext] factual

inquiry proceeds to a new level of specificity."); *Martin v. Gen. Elec. Co.*, 891 F. Supp. 1052,

1056 (E.D. Pa. 1995) ("[A] plaintiff can defeat a motion for summary judgment either by

discrediting defendant's reason or by coming forward with additional evidence of

discrimination[.]").  Therefore, a plaintiff's *prima facie* case, combined with "evidence

suggesting that an employer's proffered reasons for an adverse employment action are false . . .

may sufficiently undermine the employer's credibility to enable a reasonable trier of fact to

conclude that illegal discrimination has occurred." *Mitchell v. Miller,* 884 F.Supp.2d 334, 371

(W.D. Pa. 2013) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48

(2000)).

In Plaintiff's Response, he asserts that for the same eleven (11) reasons that he has

allegedly established a *prima facie* case, Plaintiff has established pretext.  Resp. 9.  Thus, for the

same reasons that Plaintiff failed to establish a *prima facie* case, the Court finds that they do not

show how Defendant's legitimate, nondiscriminatory reason is pretext for discrimination.

Accordingly, even if Plaintiff had established a *prima facie* case of discrimination, a conclusion

this Court does not support, his claims would still fail because he cannot show that Defendant's

stated reason for his termination is pretextual.

## VI.    CONCLUSION

For the reasons outlined above, Plaintiff has failed to establish claims of discrimination under either Title VII or the PHRA.  Accordingly, Defendant's Motion for Summary Judgment must be granted in its entirety.

An appropriate Order follows.

BY THE COURT:


*/s/ C. Darnell Jones, II*
C. DARNELL JONES, II      J.